IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.   4:04cr48/SPM
　　　4:06cv412/SPM/MD

LARRY VICTOR REEVES

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 65). The government has filed a response (doc. 68) and the defendant has filed a reply (doc. 71). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**I. BACKGROUND**

Defendant was charged in a two count indictment charging the defendant with conspiracy to commit fraud through the unauthorized use of an access device in violation of 18 U.S.C. § 1029(b)(2) and unauthorized use of an access device in violation of 18 U.S.C. § 1029(a)(2) and (c) and 2. (Doc. 1). The offense conduct involved fraudulently obtaining and using credit card account numbers, with the total loss exceeding $86,000. (Doc. 13).

Defendant signed a factual basis for plea and a plea and cooperation agreement on October 13, 2004. (Doc. 19 & 20). According to the former document, between September 2002 and March 2004, the defendant purchased over $86,000 in merchandise from Lowe's and Home Depot stores in Florida and Georgia using stolen credit card numbers provided to him by a coconspirator who obtained them from a Raceway gas station in New Jersey. (Doc. 19 at 1). Defendant purchased primarily home appliances and tools, and would either advertise items for sale in a local newspaper or pawn them. (Doc. 19 at 2). To carry out the scheme, defendant used an "instant issue" card issued by First Union Bank which allowed the user to write in the name of the cardholder, account number, and expiration date. (*Id*.) Phone records demonstrate that defendant called the gas station in question on numerous occasions during the course of the conspiracy. (Doc. 19 at 4). Furthermore, all of the account holders of the stolen credit card numbers had purchased gas or other items at the subject Raceway shortly before defendant used their credit card numbers to make purchases. (*Id.*)

The plea and cooperation agreement set forth that defendant faced a maximum term of five years imprisonment, a $250,000 fine, a three year term of supervised release and a $100 special monetary assessment on count one. On count two, he faced a maximum of ten years imprisonment, a $250,000 fine, a three year term of supervised release, and a $100 special monetary assessment. The agreement also provided that defendant agreed to make restitution in an amount to be determined by the court. The parties agreed that the Sentencing Guidelines applied and that the district court's discretion in sentencing was limited only by the statutory provisions and the Sentencing Guidelines, while also reserving the right to argue positions under the Guidelines, including requests for departure from the applicable range. (Doc. 20 at 2-3).

Defendant's rearraignment proceeding was held before United States Magistrate Judge William C. Sherrill. (Doc. 39). The court ascertained the validity of defendant's consent to have it hear his plea and explained the defendant's rights to him. Relevant to the instant motion, the court explained the proof necessary to establish a conspiracy and asked the defendant whether he had any questions about that, to which he responded in

the negative. (Doc. 39 at 10-11). The defendant indicated that he understood the elements of the offenses as explained by the court (*id*. at 11-13), and after conferring twice with counsel agreed to the facts as set forth in the factual basis for plea, subject to his right to challenge the amount of unlawful transactions for which he should be held accountable. (*Id.* at 11-16). The court reiterated the possible penalties that were set forth in the plea agreement, the fact that the sentencing guidelines applied to his case, and how the guidelines worked. (*Id.* at 17-19). It explained the time frame and process for taking an appeal, and how defendant could contact the clerk of court via telephone to accomplish that end if he was unable to reach counsel. (*Id.* at 20). The court noted the Supreme Court's decision in *Blakely*,[1] and the pending *Booker*[2] case, emphasizing that through the plea agreement the defendant waived any complaint about not having a jury determine the facts that might affect the severity of his sentence, and that the district court would make such determinations by a preponderance of the evidence rather than beyond a reasonable doubt. (*Id.* at 22-23). After ensuring that defendant understood his rights, that there was no force or coercion behind his decision to plead guilty, Judge Sherrill entered a report and recommendation that the guilty plea be accepted, and this recommendation was adopted. (Doc. 21 & 22).

Defendant's presentence investigation report reflected a base offense level of 6 with an eight level increase due to the quantity of loss, and a two level downward adjustment for acceptance of responsibility for a total offense level of 12. He had a criminal history category of III. The applicable guidelines range was 15 to 21 months, and as noted above, the statutory maximum terms of imprisonment were five years on count one and ten years on count two. The probation officer noted in the report that an upward departure could be warranted because defendant's criminal history category III did not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that he defendant would commit other crimes. (PSR ¶ 92).

---

[1] ***Blakely v. Washington***, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[2] ***United States v. Booker,*** 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

At sentencing, counsel urged that defendant be sentenced to a term of 13 months imprisonment, within the formerly mandatory guidelines range. (Doc. 40 at 12). The court overruled defendant's objection to the amount of loss, and noted the defendant's statement that much of his criminal history relates to alcohol abuse. (Doc. 40 at 14). Before imposing sentence, the court noted its awareness of the *Booker* decision[3] and the non-mandatory nature of the guidelines, but after stating that it had tailored the sentence to take into account the facts and circumstances of the defendant's case it imposed a sentence of 60 months imprisonment. (Doc. 40 at 15). The court also directed that defendant pay restitution in the amount of $88,222.74.

Defendant filed a motion to correct illegal sentence the day after sentencing, contending that due process considerations prevented the court from imposing a sentence more severe than that called for by the guidelines. This motion was denied after response by the government and supplemental briefing by both parties (doc. 31, 41, 44 & 47). Defendant then filed a motion to correct presentence investigation report in which he claimed that there were errors in his criminal history, and he also appeared to wish to deny his guilt of count 1, claiming that there was no one else involved in the crime, so it could not have been a conspiracy. (Doc. 48). The court denied the motion, noting that only one of the defendant's claims could have had any impact on his sentence and that such claim was cognizable either on direct appeal or in a § 2255 motion. (Doc. 50). Defendant's motions for release from custody pending appeal and motion for bond pending appeal were also denied. (Doc. 51 & 52, 58 & 59).

Defendant appealed, claiming that the application of the sentencing guidelines as advisory, rather than mandatory, worked to his detriment and violated his due process rights and violated his plea agreement, and that the sentence imposed was unreasonable. On March 17, 2006, the Eleventh Circuit rejected each of his contentions and affirmed his convictions and sentences on appeal. (Doc. 63). The mandate issued on August 18, 2006, and the defendant filed the instant § 2255 motion on August 31, 2006. (Doc.65).

---

[3] Defendant was sentenced on January 18, 2005. The Supreme Court's decision in *Booker* was published on January 12, 2005.

*Case No: 4:04cr48/SPM; 4:06cv412/SPM/MD*

In the § 2255 motion currently before the court, defendant claims that counsel's performance was constitutionally ineffective for several reasons. The government opposes the motion in its entirety.

## II. LEGAL ANALYSIS

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high

degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003). (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.

*Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001). With these principles in mind, the court will consider each of the defendant's claims of ineffective assistance of counsel.

    B.  <u>Failure to correct defendant's PSR</u>

Defendant contends that there are many errors in the PSR relating to the recitation of his criminal history and that counsel was constitutionally ineffective for his failure to "correct" them. He unsuccessfully raised this issue with the district court before his direct appeal. (Doc. 48 & 50). Defendant does not dispute his conviction for criminal restraint, as a result of which he was fined $325, which was identified by the district court as the only alleged error that might have had an impact on his sentence. (Doc. 50 at 1). As set forth by the government in its responsive memorandum, any other errors in the recitation of defendant's criminal history would not have impacted defendant's sentencing guidelines range, as he was not assessed criminal history points for any other disputed areas of the report. Although defendant contends that the Eleventh Circuit improperly relied on an inflated number of convictions in reaching its conclusion that his sentence was warranted, (doc. 65, att. 4), the reference to "26 past convictions" was not contained in the appellate opinion that was issued as mandate on August 18, 2006. (Doc. 63 at 3).

Defendant also argues that he should have received a three point reduction for acceptance of responsibility, rather than only two points. However, because his offense level fell below 16, he was not eligible for a three-point reduction. § 3E1.1(b). And,

contrary to defendant's suggestion, there is nothing in the plea agreement establishing that he was promised a three level reduction. Therefore, his claim that counsel was constitutionally ineffective because he failed to raise this argument is without merit.

C. <u>Failure to advise defendant of change in the law</u>

Defendant contends that counsel's failure to advise him that the Supreme Court had changed the sentencing guidelines from mandatory to advisory in between the time of his rearraignment and sentencing rendered counsel's performance constitutionally deficient. He also contends that this left him essentially without a valid plea agreement.

As noted above, the newly advisory nature of the sentencing guidelines and the impact of this change on the defendant's sentence was a focal point of his appeal. (Doc. 63 at 4-6). The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects"). Defendant's attempt to relitigate this claim under the umbrella of an ineffective assistance of counsel claim should not be permitted. Furthermore, even assuming the truth of his assertion that counsel did not explain the *Booker* decision to him prior to sentencing, defendant does not establish that the outcome of the proceedings would have been any different had this been done.

D. <u>Failure to explain the nature of the charges</u>

Defendant contends that counsel failed to explain the full nature of the charges and to explain what each charge was. He claims that he did not understand the nature of the conspiracy charge, and now claims that there was no conspiracy because he had no co-conspirators and no co-defendants. His claim is refuted by the record.

The factual basis signed by the defendant provided that he obtained the stolen credit card numbers from a co-conspirator. (Doc. 19 at 1). In addition, at his rearraignment the court read the indictment to him and explained the nature of a conspiracy. (Doc. 39 at 10-11). The defendant indicated under oath that he had no questions about the charge and that he understood the elements of the offense. (*Id.* at 10-12). At other times when the defendant was unclear about something, he asked for permission to speak with counsel. (Doc. 39 at 14, 15, 19). Thus, the fact that he did not ask any questions of counsel after the court's explanation of the conspiracy charge provides further support for the conclusion that his statements of understanding at the time were true.

Furthermore, it is long established that a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*.* They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Id.; see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979)); *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995); *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991); *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991). There is no such compelling evidence in this case. "If the

Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514, n.4 (11th Cir. 1986).  He is not entitled to relief.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 65) be DENIED.

At Pensacola, Florida, this 11th day of December, 2006.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).